**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD FURMANEK,<br><br>                Plaintiff,<br><br>        v.<br><br>BOMBARDIER TRANSPORTATION (HOLDINGS) USA INC., JOHN DOES 1-10, and XYZ CORP. 1-10,<br><br>                Defendants. | Case No. 2:20-cv-05166 (BRM) (JAD)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is a Motion to Dismiss filed by Defendants Bombardier Transportation (Holdings) USA Inc. ("Bombardier"), John Does 1-10, and XYZ Corp. 1-10 (together, "Defendants") seeking to dismiss the First, Second, and Fourth Counts of Plaintiff Richard Furmanek's ("Plaintiff") Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3) Plaintiff filed an opposition to the Motion to Dismiss (ECF No. 6) and Defendants filed a reply. (ECF No. 7.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss Counts One, Two, and Four is **GRANTED.**

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

   A.  **Factual Background**

Plaintiff, a resident of Wallington, New Jersey, began working on January 2, 2019, as a "Recovery Tech" for Bombardier, a global manufacturer of planes and trains with over 68,000 employees. (Compl. (ECF No. 1-2) at 1–2.) Plaintiff began working for Bombardier through a temporary agency for an initial 90-day period. (*Id.* ¶ 11.) Plaintiff excelled at the approximately thirteen exams he was required to pass in order to work for Bombardier. (*Id.* ¶ 12.) Plaintiff reported to Supervisors Angel Alicea ("Alicea") and Richard Crockett ("Crockett") and received positive feedback on his performance and had a good working relationship with both Alicea and Crockett. (*Id.* ¶¶ 13–15.) Due to his exceptional performance on the job, Plaintiff was permitted to work the second shift, his first choice. (*Id.* ¶ 14.) Following the expiration of the 90-day period, Plaintiff was "onboarded" as a permanent employee for Bombardier on or about April 2, 2019, and received a salary of approximately $44,000.00 per year. (*Id.* ¶¶ 16–17.)

On or about May 7, 2019, Plaintiff, who served in the Marine Reserves, received orders to report for duty from June 10, 2019 through June 26, 2019 at 29 Palms Military Base in San Bernardino County, California. (*Id.* ¶ 19.) Plaintiff informed Alicea and Crockett of his need to report for duty, and they both appeared upset to hear the news and told Plaintiff they did not know if Bombardier would be able to accommodate Plaintiff for being away for so long. (*Id.* ¶¶ 19–20.) Plaintiff apologized and stated he had to comply with the military orders but would work overtime

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

to minimize any disruption of him being absent. (*Id.* ¶ 21.) Both Alicea and Crockett were "clearly displeased" as they walked away from Plaintiff. (*Id.* ¶ 22.)

On May 16, 2019, Plaintiff reported to work for his scheduled 6:00 am shift. (*Id.* ¶ 23.) At approximately 12:00 pm that day, Plaintiff grew very ill and informed a shift supervisor named "Walter" he was feeling sick. (*Id.* ¶ 24.)[2] Walter told Plaintiff to stay until the end of his shift so he would not have to make up for any lost time. (*Id.* ¶ 25.) Plaintiff complied despite feeling extremely ill, and thereafter his medical condition worsened. (*Id.* ¶¶ 26–27.) On May 17, 18, and 19, 2019, Plaintiff called out sick to "Central Control" several hours prior to the start of his shift. (*Id.* ¶ 28.) While out sick, Plaintiff "suffered from a debilitating medical condition" that prevented him from leaving his room. (*Id.* ¶ 29.) On May 18, 2019, Plaintiff went to an Urgent Care clinic where he was diagnosed with an upper respiratory infection and received a doctor's note requesting Plaintiff stay out of work until May 21, 2019. (*Id.* ¶¶ 30–31; *see* Ex. 1.) Plaintiff was not scheduled to work on May 20 or May 21, 2019. (*Id.* ¶ 32.)

On May 22, 2019, Plaintiff returned to work following his three-day absence and showed Valerie Williams ("Williams"), the Human Resources Business Partner, a copy of the doctor's note excusing him from work from May 18 through May 21, 2019. (*Id.* ¶¶ 33–35.) Plaintiff told Alicea he provided Williams with the doctor's note. (*Id.* ¶ 35.) Alicea said nothing and walked away from Plaintiff. (*Id.* ¶ 36.) On May 25, 2019, Alicea gave Plaintiff a disciplinary write-up for taking three unpaid sick days because, according to Alicea, Plaintiff had only accumulated two sick days and was therefore being disciplined for taking a third sick day. (*Id.* ¶¶ 38–39.) Plaintiff

---

[2] Plaintiff contends he does not know the last name of "Walter," the shift supervisor on duty on May 16, 2019. (*Id.* ¶ 24.)

informed Alicea he provided the doctor's note to Williams who accepted the doctor's note with no issue. (*Id.* ¶ 40.)

On June 5, 2019, Plaintiff gave Alicea a copy of his military orders involving his reserve duty in California from June 10, 2019 through June 26, 2019.[3] (*Id.* ¶ 41.) Plaintiff informed Alicea he would also need to take off June 9, 2019 and June 27, 2019 for travel time. (*Id.* ¶ 42.) Alicea responded in a "very hostile fashion" and told Plaintiff he would not be given any time off beyond what was in the military orders. (*Id.* ¶ 43.)

Thereafter, on June 7, 2019, Plaintiff was given a 90 Day Probationary Evaluation Form dated June 7, 2019 ("Probationary Form") by Sarah Bloom ("Bloom"), a manager. (*Id.* ¶¶ 47, 49.) Bloom also gave a copy to Union Representative Ramon Lopez ("Lopez"). (*Id.* ¶ 49.) Lopez had no prior notice of the Probationary Form and was surprised to receive it, and Plaintiff was shocked as well. (*Id.* ¶¶ 51–52.) Plaintiff, upon receiving the Probationary Form, "stated that the [contents of the] document w[ere] untrue, and he had never been given any notice of performance issues." (*Id.* ¶ 53.) He asked both Bloom and Crockett questions but was told they did not have to answer his questions. (*Id.* ¶¶ 54–55.) At the time he received the Probationary Form, he was in the "Video Room" surrounded by Bloom, Lopez, and Crockett. (*Id.* ¶ 58.)[4] He asked Lopez for guidance who responded there was nothing to be done but to sign the Probationary Form. (*Id.* ¶ 57.) Plaintiff did as directed and signed the Probationary Form, and was then asked by Bloom to turn over his ID, badge, and keys. (*Id.* ¶¶ 60–61.) Bloom then asked Lopez to escort Plaintiff out of the building.

---

[3] The Complaint inadvertently states Plaintiff's military duties in California spanned from "June 10, 2019 through June 26, 2017." (*Id.* ¶ 41.)

[4] On June 7, 2019, Plaintiff arrived to work for his 2:00 pm shift and checked in to the "Video Room" to receive his assignment. (*Id.* ¶ 45.) He did not receive the assignment but instead Crockett told Plaintiff to wait in the Video Room until Bloom and Lopez arrived. (*Id.* ¶ 46.)

4

(*Id.* ¶ 62.) Plaintiff was humiliated by the incident and maintains he was never given any warnings before taking sick leave. (*Id.* ¶¶ 64–65.) He was never suspended, demoted, or placed on a performance improvement plan before being terminated. (*Id.* ¶¶ 67–68, 71.)

Plaintiff alleges Defendants' decision to terminate Plaintiff "was a clear act of retaliation" for Plaintiff notifying Defendants of his disability, taking medical leave, and participating in the armed forces. (*Id.* ¶ 73.) As a result of Defendants' "unlawful termination," Plaintiff suffered emotional trauma, physical injury, and physical manifestations of emotional distress. (*Id.* ¶¶ 74–75.) He was unable to meet his financial obligations and suffered from anxiety and sleeplessness. (*Id.* ¶ 75.)

### B.     Procedural History

Plaintiff filed a Complaint on March 31, 2020, in New Jersey Superior Court, Law Division, Essex County, alleging disability discrimination and retaliation in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 *et seq.* ("NJLAD") (Counts One and Two), as well as unlawful retaliation in violation of the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.* ("USERRA") (Count Three) and the New Jersey Conscientious Employee Protection Act, N.J .Stat. Ann. 34:19-1, *et seq.* ("CEPA") (Count Four). (ECF No. 1-2 ¶¶ 79–100.)

Defendants removed the action to this Court on April 28, 2020. (ECF No. 1.) Defendants filed this Motion on May 4, 2020. (ECF No. 3.) In the Motion, Defendants argue the CEPA claim should be dismissed for failure to state a claim and that Plaintiff cannot recover punitive damages under USERRA. (ECF No. 3-1 at 13–18.) Plaintiff filed his opposition to the Motion on June 1, 2020 (ECF No. 6) and stated, "Plaintiff does not oppose dismissal of his CEPA claim and further consents that damages pursuant to USERRA do not allow for punitive damages." (ECF No. 6 at 1.)

Consequently, the CEPA claims and punitive damages claim under USERRA will be dismissed on this basis alone. *See Lightfoot v. Healthcare Revenue Recovery Group, LLC*, Civ. A. No. 14-6791, 2015 WL 1103441, at *4 (D.N.J. Mar. 11, 2015) (stating "[d]efendant's Motion to Dismiss Count Four is unopposed and will be granted"). Defendants filed a reply on June 8, 2020. (ECF No. 7.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III. DECISION

Before considering the merits of Plaintiff's claims, the Court first must be satisfied it has subject-matter jurisdiction over this action. *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (3d Cir. 1963)). While no party challenges the Court's subject-matter jurisdiction, "federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. v. Senjuu Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Defendants removed this action alleging jurisdiction under 28 U.S.C. § 1332(a), which provides district courts with original jurisdiction over matters between citizens of different states where the amount in controversy is greater than $75,000.00. Diversity jurisdiction "requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). In any case resting on diversity jurisdiction, the Court must determine for itself whether or not every defendant is completely diverse from the plaintiff. *See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)).

The Complaint is silent on Bombardier's state of incorporation and state of its principal place of business. It is well established a corporation takes on the citizenship of "both its state of incorporation and the state of its principal place of business." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). However, "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). In this case it is the Defendants' burden. In the Notice of Removal,

8

Defendants maintain Bombardier is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Pittsburgh, Pennsylvania. (ECF No. 1 at 4.) The Court therefore concludes there exists the diversity required by § 1332.

Defendants further maintain the amount in controversy is greater than $75,000.00, as Plaintiff seeks compensatory damages of "not less than $750,000." (ECF No. 1-2 at 10.) Specifically, Plaintiff seeks damages for lost wages and benefits, back pay, front pay, emotional distress, pre-judgment interests on lost wages, attorneys' fees under the fee-shifting provision of NJLAD and CEPA, and punitive damages. (*Id.* ¶ 10–11.) "A case may be dismissed for failure to meet the amount in controversy requirement only if it appears to a 'legal certainty' that the claim is for less than the jurisdictional amount." *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 220 (3d Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999)). Accordingly, the Court concludes the amount-in-controversy requirements of § 1332 also have been met, giving this Court subject-matter jurisdiction over this action. The Court will now address Defendants' arguments that Counts One and Two should be dismissed.

In Counts One and Two of the Complaint, Plaintiff alleges Defendants are liable for violations of the NJLAD. (ECF No. 1-2 at 7–8.) Specifically, Plaintiff alleges Defendants are liable for disability discrimination and retaliation against Plaintiff for engaging in the protected activity of taking medical/disability leave and/or requesting reasonable accommodations due to the medical/disability leave. (*See id.*). Defendants contend their Motion should be granted as to Counts One and Two because Plaintiff failed to allege sufficient facts in support of his allegations. (ECF No. 3-1 at 8–12.) The Court agrees.

A plaintiff must demonstrate the following elements to establish a claim of discriminatory discharge under the NJLAD: "(1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794 (N.J. 1988); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). "[F]or claims of disability discrimination, the first element of the prima facie case, that plaintiff is in a protected class, requires plaintiff to demonstrate that he or she qualifies as an individual with a disability, or who is perceived as having a disability, as that has been defined by statute." *Victor*, 4 A.3d at 142.

To set forth a claim under NJLAD, then, a complaint must allege the reality or perception of a "disability" within the meaning of the statute. The statute defines a disability as follows:

> q. "Disability" means physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Disability shall also mean AIDS or HIV infection.

N.J. Stat. Ann. § 10:5-5(q).

The term "disability" includes "two specific categories": physical and non-physical. *Nguyen v. Wal–Mart*, Civ. A. No. 2:12-01824, 2013 WL 3222498, *6 (D.N.J. Jun. 25, 2013). "To meet the physical standard, a plaintiff must prove that he [] is (1) suffering from physical disability,

10

infirmity, malformation or disfigurement; (2) which is caused by bodily injury, birth defect or illness . . . ." *Id.* Expert medical evidence is required if "the existence of a handicap is not readily apparent[.]" *Id.*; *Photis v. Sears Holding Corp.*, Civ. A. No. 11-6799, 2013 WL 3872519, at *6 (D.N.J. July 25, 2013).

The definition of a disability is concededly broad. But a respiratory infection, resulting in a work absence of 3 days—a very common human experience does not rise to the level of the conditions listed in the statute. As alleged, it appears to have been nothing more than a transient infection, not meaningfully related to any "physical disability, infirmity, malformation or disfigurement . . . which is caused by bodily injury, birth defect or illness." The law is consistent with this commonsense conclusion.[5] Indeed, in *McCoy v. Port Liberte Condo Ass'n # 1, Inc.*, Civ. A. No. 02-1313, 2003 WL 23330682 (D.N.J. Sept. 12, 2003), the plaintiff experienced abdominal pain, called in sick and went to the emergency room, where she was diagnosed with "possible cystitis" and allegedly advised to stay in bed for a few days. Under the then-current definition of "handicapped" under the NJLAD, the court found, a bladder infection would be unlikely to qualify. In *Photis*, the plaintiff suffered from a seizure and was admitted to the hospital overnight on February 7, 2011. 2013 WL 3872519, at *3. On February 9, 2011, he returned to work, presenting a copy of his hospital release form. *Id.* The court held this did not amount to a "disability" within the meaning of NJLAD; there were no indications it was "anything more than 'a condition of

---

[5] The Court does not suggest a disability need be immutable or severe. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004). The illness at hand, however, is a common one that was not merely temporary but truly transient as made clear by Plaintiff's immediate return to work. *See Riconda v. US Foods, Inc.*, Civ. A. No. 19-1111, 2019 WL 4254389, at *3 (D.N.J. Sept. 9, 2019) (providing that a "garden variety ailment" that was not merely temporary "but truly transient" does not constitute a disability within the meaning of NJLAD).

11

limited duration' or a 'temporary emergency situation.'" *Photis*, 2013 WL 3872519, at *6 (quoting *Spagnoli v. Brown & Brown Metro, Inc.*, Civ. A. No. 06-414, 2007 WL 2362602, *9 (D.N.J. Aug. 15, 2007)).[6]

The Court now turns to the "perceived disability" prong of Plaintiff's claim. "NJLAD protects employees who are . . . perceived to be disabled from adverse employment action[.]" *Glenn v. Lawrence Twp. Police Dep't*, Civ. A. No. 10-3121, 2012 WL 933335, *7 (D.N.J. Mar. 20, 2012).

> In order to demonstrate that a plaintiff is 'perceived to have' a disability, the plaintiff must show that the employer 'entertain[ed] misperceptions about the [plaintiff], either believing that the individual has a substantially limiting impairment that he or she does not have or that the individual has a substantially limiting impairment when, in fact, the impairment is not as limiting as the employer believes.

*Id.* The "perceived" disability is alleged here as a legal conclusion, without supporting facts. The Complaint does not state the employer mistakenly believed the respiratory infection was indicative of a more serious condition. It does not allege the employer jumped to the conclusion, for example, that Plaintiff would be out of work for an extended period of time. In fact, Plaintiff *did* return to work after three days, as the employer well knew. (*See* ECF No. 1-1 at 4.) A respiratory infection is not a condition, such as epilepsy for example, "that trails behind it a history of myths, misconceptions, or prejudices. Indeed, virtually everyone has suffered from something similar at one time or another." *See Riconda*, 2019 WL 4254389, at *3 (granting dismissal because a stomach virus resulting in a work absence of 2 ½ to 3 days does not constitute a disability under NJLAD);

---

[6] Specifically, the court in *Photis* determined plaintiff did not establish a *prima facie* case of discriminatory discrimination "because Plaintiff has not shown that he is disabled [and] [a]lthough Plaintiff alleges that his seizure constitutes a disability, he was never diagnosed with a seizure condition or any other disability, and the test results conducted by the hospital after the seizure were inconclusive." 2013 WL 3872519, at *6.

*Adesanya v. Novartis Pharm. Corp.*, Civ. A. No. 2:13-05564, 2016 WL 4401522, at *7 (D.N.J. Aug. 15, 2016*), aff'd sub nom. Adesanya v. Novartis Pharm. Corp.*, 755 F. App'x 154 (3d Cir. 2018) (providing that where plaintiff presented no evidence of an actual disability and the doctor's note also failed to indicate plaintiff was disabled as intermittent pain would not constitute a disability, the NJLAD claim would fail). The Complaint, as pled, does not contain enough factual material to establish this ordinary ailment was, or was perceived as, a disability within the meaning of NJLAD.[7] As such, the Court cannot find Plaintiff has successfully alleged he suffered disability discrimination or retaliation.[8]

Accordingly, for the reasons stated above, Defendants' Motion to Dismiss Counts One and Two of the Complaint is **GRANTED**.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Counts One and Two are **DISMISSED WITHOUT PREJUDICE**. Count Four is **DISMISSED WITH PREJUDICE,** as is Plaintiff's request for punitive damages under USERRA. An appropriate order follows.

---

[7] A reasonable accommodation/retaliation claim, too, depends on a threshold allegation of a disability. Indeed, to state a claim for retaliation under NJLAD, a plaintiff must first show: (1) that she requested a reasonable accommodation, (2) that she suffered an adverse employment action, and (3) a causal connection between the two events. *See, e.g.*, *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). As Plaintiff cannot show he is disabled, his request for accommodation is unreasonable and his retaliation claims fail. *See Adesanya v. Novartis Pharm. Corp.*, Civ. A. No. 2:13-05564, 2016 WL 4401522, at *7 (D.N.J. Aug. 15, 2016) (emphasis added), *aff'd,* 755 F. App'x 154 (3d Cir. 2018).

[8] Here, Plaintiff may perceive his termination as unfair or arbitrary, but the Court cannot find that he has successfully alleged that it resulted from disability discrimination.

Dated: December 30, 2020

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**